BERTHA BAZINET *v.* CITY OF HARTFORD

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 3—decided April 26, 1949.

*James D. Cosgrove,* assistant corporation counsel, with whom, on the brief, were *Franz J. Carlson,* corporation counsel, and *Frank A. Murphy,* assistant corporation counsel, for the appellant (defendant).

*Joseph J. Fauliso,* with whom was *John W. Joy,* for the appellee (plaintiff).

JENNINGS, J.  The plaintiff had a verdict of $2200 for personal injuries sustained by her as a result of a fall on an icy sidewalk.  The defendant appealed from the denial of its motion to set aside the verdict and from the judgment.

The jury reasonably could have found the following facts: Buckingham Street intersects but does not cross Main Street in Hartford.  This intersection is near the center of the city and is much used by vehicles and pedestrians.  At its northwest corner there is a small park surrounded by an iron fence and bounded on the south and east by public sidewalks.  The park is owned by the defendant and the adjacent sidewalks are under the care of its park department.

Snow started to fall between 5 and 6 p. m. on December 10, 1947, and ceased about 4:30 a. m. on December 11.  The sun rose at 7:09 a. m.  The temperature at 8 a. m. was 27 degrees.  As a result of this storm the

sidewalks in Hartford in general and that on the north side of Buckingham Street in particular were covered with snow and ice and were very slippery and dangerous. The plaintiff, in the exercise of due care and upon her lawful occasions, slipped, fell and was injured on this walk about 8:30 a. m.

The evidence as to the size of the problem confronting the city and the means adopted to meet it was unusually complete. It was not disputed and could not have been disregarded by the jury on any reasonable basis. There are, in Hartford, approximately 200 miles of streets, 350 miles of sidewalks and 4000 crosswalks. In the winter of 1947-1948, the street department expended $150,000 for snow removal. The public parks are under the supervision of the park department. They contain about 2700 acres of land in 27 parcels. About sixty men are used for snow removal. The parks are divided into five zones and a crew is assigned to each. Buckingham Park is in the zone cared for by the crew working out of Colt Park, hereinafter referred to as the Colt Park crew. It consists of eight or nine men. This crew operates over a definite route and Buckingham Park is the fourth stop. The crew starts by 7 a. m. and did on the morning in question. It arrived at Buckingham Park about 8:30 a. m. just after the plaintiff fell.

On these facts the defendant claimed that proof of its adoption and execution of an adequate master plan to meet its problems of caring for its highways, both in general and as regards the particular case litigated, should relieve it of liability under General Statutes, Rev. 1930, § 1420 (Rev. 1949, § 2126). It also claimed that in any event the time between the formation of the ice and the plaintiff's fall was too short as a matter of law to form a basis for a finding of constructive

notice of the defect and an opportunity to remedy it before the accident.

Many considerations are involved in the determination of municipal liability for highway defects, especially when they are claimed to be due to snow and ice. *Pape* v. *Cox,* 129 Conn. 256, 260, 28 A. 2d 10. Some duty is imposed but, owing to the rigors of our winters, it is a limited one. *Campbell* v. *New Haven,* 78 Conn. 394, 396, 62 A. 665. It has been impossible to formulate a precise rule which would govern all cases. *Davanza* v. *Bridgeport,* 118 Conn. 23, 24, 170 A. 484. The general rule has been stated as follows: "What the law requires . . ., and all that it requires, is the exercise of such efforts and the employment of such measures—directed to the end that their streets and walks be maintained in a reasonably safe condition, all the circumstances of the situation considered—as, in view of the circumstances and conditions, are in themselves reasonable. . . . The required efforts in the interest of safety are such only as reasonably might be expected to be exerted in view of all the many circumstances deserving of consideration, and the end sought for or attained need be only such as satisfies the test of reasonableness similarly applied. This saving feature of our rule, is too often overlooked . . . ." *Carl* v. *New Haven,* 93 Conn. 622, 625, 626, 107 A. 502; *Kristiansen* v. *Danbury,* 108 Conn. 553, 557, 143 A. 850.

In the determination of whether or not the defendant performed this duty of using reasonable care to keep its sidewalks reasonably safe, it is entitled to have its conduct judged by the way in which it met the whole problem. *Ritter* v. *Shelton,* 105 Conn. 447, 450, 135 A. 535. In the case at bar, not only were the problem and the means provided for solving it pre-

sented but the way in which these means were used on the day in question was described. *DeCrosta* v. *New Haven,* 119 Conn. 344, 346, 176 A. 268. The duty of the defendant was fully performed. When the walks and streets of a city the size of Hartford are sheeted in snow and ice during the night, it would be too much to expect that they should all be made reasonably safe within an hour and a half after sunrise. See *Scoville* v. *West Hartford,* 131 Conn. 239, 243, 38 A. 2d 681. The Colt Park crew could not take care of all of the sidewalks in its zone at once. The only suggestion of the plaintiff is that the crew should have started with Buckingham Park. No adequate reason appears why this should have been done. The other locations in its zone were also central. This situation was probably sufficient in itself to remove any basis for the verdict. Be that as it may, the same result is reached beyond question on another ground.

The storm stopped at 4:30 a. m. The plaintiff fell at 8:30 a. m., an hour and a half after sunrise. The time elapsed was insufficient as a matter of law to sustain a finding of constructive notice and an opportunity of remedying the condition. *Jennes* v. *Norwich,* 107 Conn. 79, 81, 140 A. 119; *Frohlich* v. *New Haven,* 116 Conn. 74, 75, 163 A. 463; and see *Scoville* v. *West Hartford,* supra. The plaintiff claims that the jury could have found actual notice from evidence that the Main Street side of the park had been sanded before the accident. There was no evidence as to when Main Street was sanded and therefore no evidence that the defendant had time and opportunity to remedy the condition on Buckingham Street. This claim will not avail the plaintiff.

The court was in error in denying the motion to set aside the verdict.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.