ALBERT C. WILSON *v.* M & M TRANSPORTATION COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued October 7—decided December 7, 1938.

*Theodore E. Steiber,* for the appellant (plaintiff).

*Martin E. Gormley,* with whom, on the brief, was *Adrian W. Maher,* for the appellee (defendant).

BROWN, J. This action arises out of a collision between an automobile operated by the plaintiff and the defendant's truck driven by its agent and employee. The collision occurred at the junction of Lafayette Street and Railroad Avenue where it extends along the northerly side of the elevated stone structure comprising the roadbed of the New York, New Haven and Hartford Railroad in Bridgeport. The plaintiff appeals from the judgment for claimed errors at the trial and from the denial of its motion to set aside the verdict.

It is undisputed that this railroad structure runs easterly and westerly; that a public roadway parallel therewith abuts it on the north as does a similar roadway on the south; that Lafayette Street, thirty-two

feet wide, extends in a northerly and southerly direction, and, progressing from the south, intersects the southerly roadway, passes for sixty-four feet under a steel bridge which carries the tracks, intersects the northerly roadway, and continues to the north; that a single set of signal lights facing south located on the easterly side of the underpass twenty-two feet south of the southerly edge of the north roadway, controls traffic in both intersections going northerly on Lafayette Street; that another facing west at the southeasterly corner of the intersection of Lafayette Street and the north roadway, controls traffic going easterly on this roadway; that whenever the light of one of these shows red the light of the other shows green, the change from one color to the other being always simultaneous in both; that about 9 p.m. on December 12, 1935, a Chevrolet sedan driven northerly on Lafayette Street by the plaintiff, was in collision in the northeasterly portion of the intersection of Lafayette Street and the north roadway with the defendant's truck which was proceeding easterly along this roadway; and that the plaintiff sustained personal injuries thereby.

The gist of the defendant's negligence alleged in the complaint primarily relied upon by the plaintiff, was its failure to observe the right of way accorded him under General Statutes, Cum. Sup. 1935, § 75c, by virtue of his having entered the intersection when the light for northbound traffic showed green. Subdivision (1) of this act provides that when signal lights of this kind direct traffic at an intersection, on "green . . . vehicular traffic facing the signal may proceed . . . except that such traffic shall yield the right of way to . . . vehicles lawfully within . . . the intersection at the time when such signal was exhibited." The application of this statute to the facts in deter-

mining the issues of negligence and contributory negligence, particularly as related to the plaintiff's contention under his claim just recited, that he was "lawfully within . . . the intersection" even though the light for eastbound traffic showed "green" when the defendant's truck subsequently started through, gives rise to the principal question raised by this appeal, namely, what is the correct definition of the limits of this intersection? While the finding discloses that the plaintiff's only claim of proof as to the signals showing when the two vehicles approached the intersection and the point of collision, was that the light in the underpass showed green for northbound traffic as he passed it, he argues in this court that his car had entered the intersection on green before the defendant's truck did so on a like signal directing it, and that therefore the right of way was his under the statute quoted above. The essential requisite upon which this argument is predicated is that the intersection extends at least as far southerly as the signal light twenty-two feet south of the southerly edge of Railroad Avenue North.

The court charged that "the intersection . . . is that space which lies between the curb lines of the two streets projected," and proceeded to indicate on the map in evidence what this area was. What the court indicated is not clear from the record, but it may be inferred that it was the space common to Lafayette Street and the north roadway. We, therefore, accept as correct the plaintiff's statement in his brief that the court "confined this definition to the area north of the railroad abutment." Error is assigned as to the charge upon this point, and the plaintiff argues broadly that upon the undisputed facts already recited, the north and south roadways together with the underpass, constituted a single street, and that therefore so much of all three as was common to Lafayette Street comprised

the intersection. He suggests that a contrary rule when applied to the many streets in the state "divided by so-called esplanades" would "defeat the very purpose of traffic regulation 75c," and that "the railroad abutment in this case is nothing more than one form of esplanade." Viewed in the light of the recent statement of this court that the mere presence of an open circular area at the junction of two roads "in effect created separate highways" (*Mathis* v. *Bzdula,* 122 Conn. 202, 205, 188 Atl. 264) and of the completeness with which the sixty-four foot thick solid structure isolated one roadway from the other in the present case, the plaintiff's argument is not convincing.

We are not called upon, however, to rule upon his contention as a question of law, for the plaintiff's claims of proof in the finding are conclusive that no such claim was made or question presented to the trial court. Its finding is that the "plaintiff offered evidence to prove and claimed that he had proved" that the plaintiff drove "north on Lafayette Street, and at its intersection with Railroad Avenue North he collided with the defendant's truck," and further that "the main line of the New Haven Railroad runs through Bridgeport on an elevated stone structure, and the northerly part of Railroad Avenue described above, is a separate street running along at the northerly side of this stone structure. There is a separate and distinct street on the south side also known as Railroad Avenue." While the plaintiff by his assignments of error attacks these findings and the court's refusal to substitute therefor that the railroad tracks "run along the middle of Railroad Avenue at this point elevated upon a stone wall," the finding as made must stand.

In so far as the evidence is concerned the record discloses none offered by the plaintiff that Railroad Avenue North was other than the single separate street

which its physical layout and appearance as shown by the undisputed evidence indicate it to be. The plaintiff not only failed to offer any evidence either by record or by the testimony of witnesses that Railroad Avenue South, Lafayette Street in the underpass, and Railroad Avenue North constitute a single street, but the only fair inference from what he did introduce is to the contrary, and that the last mentioned is a separate single street by itself. Exhibits D and A afford the clearest evidence of this fact. The former is a photograph of the intersection looking east on Railroad Avenue North vividly portraying it as a single street bounded along its southerly edge by the railroad's high wall of solid masonry all the way except for the single gap at Lafayette Street. Exhibit A is a map of the locus including the area of Railroad Avenue North, the underpass, and the northerly portion of Railroad Avenue South. Within the lines of Railroad Avenue North appear in large letters "Railroad Av." and within those of the underpass "Lafayette St." The part shown of Railroad Avenue South bears no designation.

In so far as what the plaintiff claimed to have proved as to Railroad Avenue North being other than a single separate street is concerned, not only did plaintiff's counsel file no request to charge with relation thereto, but he remained silent after the court had expressly invited suggestion as to any mistake made by it in designating the intersection in pointing at the map, which might not appear on the record. This being so, while, since the record shows that the statements in the finding recited in the paragraph second above are no part of the plaintiff's draft-finding, he might have successfully attacked them by a motion to rectify the appeal, this was the only method by which he could do this. *Fitzgerald* v. *Savin,* 119 Conn. 63, 66, 174

Atl. 177. No such motion having been filed, they constitute a part of the finding which cannot be reviewed upon the assignments of error which the plaintiff relies upon. Nor does the fact that the claim in the plaintiff's draft-finding that Railroad Avenue North and South was one street, was admitted by the counter-finding under § 354, Practice Book, p. 104, referred to in his brief, call for a different conclusion. The purpose of this rule is to prevent unnecessary repetition in draft and counter finding and its use has reduced the time and labor involved in the making of findings. Such an admission cannot, however, bind the judge. The finding as made is his finding and, subject to correction in a proper case, remains the finding of facts claimed to have been proved. For the reasons stated, this finding cannot be corrected upon this appeal.

The plaintiff also assigns as error this sentence of the court's charge: "Now, there is a difficult question that I can't even discuss with you, wrapped up in the fact that those lights are a little way down the street." The court continued: "The law that we must follow has to do with a person entering the intersection, and I have carefully defined what that intersection is." These statements are a part of the court's discussion of the issue of contributory negligence. It is evident when the sentence complained of is read in its context that the court's reference to "a difficult question" did not constitute an admission of inability adequately to charge as to the law of the case by reason of the peculiar location of this light, as contended by the plaintiff, but was merely a passing reference to the unfortunate practical situation to which this circumstance gave rise. The charge is full and correct upon the law applicable to the case. It is obvious, however, that the location of this light, which by virtue of the statute controlled

northbound traffic in this intersection, at a point twenty-two feet behind where any person subject to this control must be as he entered that area, provided an arrangement of signals not contemplated by the statute, and defeated its essential purpose by increasing instead of minimizing the danger of accident. This is none the less true even though it may be that solely for reasons of economy the authority installing it sought to have one signal do the work of two. While this arrangement was a departure from the usual practice which the Legislature apparently contemplated in enacting the statute, since it falls within the statute's broad provisions, the court had no choice but to charge as it did. By its remark complained of, it properly indicated that it was no part of the court's duty to indulge in a discussion as to the propriety of applying such a statute to the facts shown by the evidence.

The court's rulings on cross-examination of the plaintiff, permitting inquiry as to how the plaintiff had acquired possession of cans of kerosene in his car which he hurried to remove immediately after the collision, constituted a proper exercise of its discretion in determining the scope of cross-examination, and its caution to the jury in the charge as to the effect of this evidence, was fair to the plaintiff and legally correct. The court properly denied the plaintiff's motion to set aside the verdict. Whatever the evidence of the defendant's negligence, there was ample evidence to warrant the jury in finding that the plaintiff negligently entered the intersection at excessive speed in violation of the traffic light signal, and that this negligence was a proximate cause of the collision.

There is no error.

In this opinion the other judges concurred.